STATE OF NORTH CAROLINA v. VERNON DALE GARNER

No. 532A90

(Filed 6 December 1991)

1. **Evidence and Witnesses § 1008 (NCI4th)— hearsay—notice of intent to offer—objection waived**

   A defendant in a murder prosecution waived any right to bring forward on appeal the adequacy and timeliness of a notice of the State's intent to offer hearsay testimony where defendant made no motion to continue based on insufficiency or untimeliness of the notice, did not assert that he was surprised by the evidence, did not argue this point when the judge asked if he wished to be heard further on his objection to the testimony, and admitted in an exchange with the judge that the notice was sufficient. N.C.G.S. § 8C-1, Rule 804(b)(5); N.C.R. App. P. 10(b)(1).

   **Am Jur 2d, Evidence §§ 493, 1103.**

2. **Evidence and Witnesses §§ 1009, 1011 (NCI4th)— hearsay—findings sufficient**

   The trial court did not err by admitting hearsay testimony in a prosecution arising from a murder where the court found, on the issue of probativeness, that the declarant, the victim, was unavailable, that the statements were evidence of a material

fact, and that the statements were more probative on the fact than any other evidence which the State could procure through reasonable efforts. While the trial judge's findings of fact did not specifically provide that the evidence was not covered by any other exception found in Rule 804, the error was not prejudicial because the State offered the evidence under N.C.G.S. § 8C-1, Rule 804(b)(5), did not argue at trial that any other exception applied, and defendant's attorney based his argument on the fact that this evidence was not covered under any hearsay exception.

**Am Jur 2d, Evidence § 496.**

3. **Evidence and Witnesses § 1009 (NCI4th) — hearsay — equivalent guarantees of trustworthiness**

The trial court did not err in a prosecution arising from a murder by finding and concluding that the victim's statements as contained in hearsay testimony possessed sufficient circumstantial guarantees of trustworthiness to be admitted under N.C.G.S. § 8C-1, Rule 804(b)(5) where the declarant, the victim, was deceased and unavailable for cross-examination; the underlying events were clearly within the personal knowledge of the victim because they related to the immediate relationship between the victim and defendant; the statements were made to the victim's brother, who was living in the home and had heard numerous conversations consistent with the victim's statement to her brother about her relationship with defendant; and the victim did not recant her statements.

**Am Jur 2d, Evidence §§ 496, 516.**

4. **Evidence and Witnesses § 735 (NCI4th) — murder — victim's statements — hearsay — other evidence**

There was no prejudice in a prosecution arising from a murder where the court admitted testimony from the victim's brother about the victim's statements to defendant, but the evidence was already before the jury in substance. N.C.G.S. § 15A-1443(a).

**Am Jur 2d, Evidence §§ 496, 516.**

STATE v. GARNER

[330 N.C. 273 (1991)]

5. **Evidence and Witnesses § 1006 (NCI4th)— hearsay—residual exception—admissible**

   The trial court did not err in a prosecution arising from a murder by admitting under N.C.G.S. § 8C-1, Rule 804(b)(5) testimony regarding a statement by the victim to defendant.

   **Am Jur 2d, Evidence §§ 496, 516.**

6. **Evidence and Witnesses § 735 (NCI4th)— murder—hearsay— no prejudice**

   There was no prejudice in a prosecution arising from a murder where the court admitted testimony that the victim had told the witness that defendant had called the victim a name on the telephone. Assuming that the statement was offered to prove the truth of the matter asserted, there was no prejudice because the immediately preceding testimony was that defendant and the victim had been "cussing and fussing to each other," and the statement at issue merely fleshed out the witness's previous statement.

   **Am Jur 2d, Evidence §§ 496, 516.**

7. **Evidence and Witnesses §§ 2987, 3018 (NCI4th)— prior convictions—defendant required to read from warrants**

   There was no prejudicial error in a prosecution arising from a murder where the prosecutor was allowed to delve into the details of three prior convictions, two of them involving assaults against the victim, and defendant was required to read from the underlying arrest warrants. Defendant put his character in evidence by testifying in detail about himself and his relationship with the victim, painting a picture of himself as a level-headed, peaceful individual who consistently fended off verbal and physical attacks from the victim. It was therefore proper for the prosecutor to cross-examine defendant concerning this trait of character by eliciting details of the prior assaults. While the better practice is to limit cross-examination of prior instances of conduct to leading questions concerning the conduct itself, rather than requiring defendant to read to the jury the accusations contained in an arrest warrant, defendant here can show no harm because the same details could have been elicited through proper leading questions. N.C.G.S. § 8C-1, Rules 609(a), 404, and 405.

   **Am Jur 2d, Witnesses §§ 525, 526.**

8. **Evidence and Witnesses § 2797 (NCI4th)— cross-examinations—insulting—discretion of court**

There was no abuse of discretion in a prosecution arising from a murder where the court permitted the prosecutor to repeatedly ask defendant on cross-examination why he could remember some details about the incident but could not remember shooting into the end of the trailer.

**Am Jur 2d, Witnesses §§ 468, 471, 472.**

9. **Burglary and Unlawful Breakings § 165 (NCI4th)— first degree burglary—misdemeanor breaking or entering not submitted**

The trial court did not err in a first degree burglary prosecution by refusing to submit to the jury a possible verdict of misdemeanor breaking or entering where there was no evidence to support misdemeanor breaking or entering. If the State's evidence is believed, defendant is guilty of first-degree burglary, and if defendant's evidence is believed, he is not guilty of burglary, misdemeanor breaking or entering, or any other crime.

**Am Jur 2d, Burglary § 67; Trial § 1432.**

10. **Kidnapping § 1.2 (NCI3d)— felony murder—burglary—underlying kidnapping—instructions supported by evidence**

There was sufficient evidence in a prosecution for kidnapping and burglary to support instructions which permitted the jury to find that defendant committed the kidnapping for the purpose of terrorizing the victim or that defendant did not release the victim in a safe place where the evidence, viewed in the light most favorable to the State, shows that defendant forced his way into the trailer and forced the victim to accompany him against her will; one witness testified that from fifteen to thirty to forty-five minutes elapsed between the time the victim left the trailer and when the first shot was heard; the victim was hollering and screaming for the defendant to leave her alone as defendant faced the victim in the parking lot; some time elapsed before defendant fired the first shot; defendant cocked, breached, or loaded his gun and struck the victim in the mouth with the butt of the shotgun and then across the face with the barrel end, knocking her to the ground; defendant then fired a shotgun blast into the victim as he held her ankle in one hand and the shotgun in

the other; and his actions indicated a conscious disregard for the victim and her safety rather than a conscious act to assure that his victim was released in a safe place in that, after firing a shotgun blast into her body at close range, he walked to his vehicle, fired a shell into the trailer, and drove off, shouting, "You can come and get her now. She's yours."

**Am Jur 2d, Abduction and Kidnapping § 32; Burglary § 45.**

11. **Homicide § 4.2 (NCI3d) — felony murder — kidnapping — murder — no error**

The trial court was not required in a felony murder prosecution to instruct the jury that it must find the kidnapping to be separate and apart from the murder where the facts of the case do not raise the possibility that defendant could be convicted twice for the same act.

**Am Jur 2d, Abduction and Kidnapping §§ 9, 10, 28; Criminal Law §§ 266-268, 277, 279; Homicide §§ 183, 190, 482.**

12. **Homicide § 25.2 (NCI3d) — first degree murder — premeditation and deliberation — evidence sufficient**

There was sufficient evidence to support a jury instruction on grossly excessive force or infliction of lethal wounds as circumstances from which premeditation and deliberation could be inferred in a first degree murder prosecution where there was testimony that defendant struck the victim with the butt of a shotgun and then struck her in the face with the barrel end, knocking her to the ground; defendant then grabbed her ankle with his left hand; and the gun discharged.

**Am Jur 2d, Homicide § 439.**

13. **Criminal Law § 751 (NCI4th) — reasonable doubt — highest legal aim instruction — not confusing**

There was no possibility that the trial judge confused jurors concerning the reasonable doubt standard where the judge gave the jurors the highest legal aim pattern instruction, but also repeated the reasonable doubt instruction throughout the jury charge. Although defendant argued that the instruction improperly shifted the focus from determining guilt beyond a reasonable doubt to determining the truth, when construed as a whole no reasonable juror could have been misled.

**Am Jur 2d, Homicide § 510.**

**14. Indictment and Warrant § 7 (NCI3d) — burglary — joinder with first degree murder — indictment waivable**

Defendant could properly waive indictment as to a non-capital felony of first degree burglary joined with first degree murder where he was first indicted for first degree burglary with the intent to commit murder alleged as the only felonious intent; the prosecutor subsequently filed a superseding information in the burglary charge alleging the additional felonious intent of kidnapping; defendant signed a waiver of indictment; and the court instructed the jury on the burglary charge only on the theory that defendant intended to commit kidnapping. Joinder of the burglary charge with the capital crime of murder, for which indictment may not be waived, did not transform the burglary charge into a capital case as that term is used in N.C.G.S. § 15A-642(b).

**Am Jur 2d, Indictments and Informations §§ 221, 223, 301.**

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from judgment imposing life imprisonment entered by *Allen (J.B.), J.,* at the 1 January 1990 Criminal Session of Superior Court, ALAMANCE County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to additional judgments allowed by the Supreme Court 4 January 1991. Heard in the Supreme Court 6 May 1991.

*Lacy H. Thornburg, Attorney General, by David Roy Blackwell, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Daniel R. Pollitt, Assistant Appellate Defender, for defendant-appellant.*

FRYE, Justice.

On 8 May 1989, an Alamance County grand jury indicted defendant for first-degree murder and first-degree kidnapping of Debbie Leigh Mills Brown. The grand jury, on the same day, also indicted defendant for discharging a firearm into occupied property, first-degree burglary of Charles Steven Barbour's mobile home, assault by pointing a gun on David B. Sperling and Barbour, and communicating threats to Barbour. On 22 December 1989, the State drafted a superseding information as to the first-degree burglary and first-degree kidnapping, and defendant signed a waiver of indictment

on both charges and agreed as to those two charges to be tried upon the information. These informations were filed on 27 December 1989.

Defendant entered a plea of not guilty to all the charges, and the jury convicted defendant of all the charges. After a sentencing proceeding held pursuant to N.C.G.S. § 15A-2000, the jury recommended a sentence of life imprisonment for the murder conviction. The trial judge found aggravating and mitigating factors in the burglary case and arrested judgment in the kidnapping case. Defendant received a life sentence for the first-degree murder, a consecutive life sentence for the burglary, a consecutive three-year sentence for discharging a firearm, and a concurrent six-month sentence for the assaults and communicating threats convictions. Defendant appeals his conviction for first-degree murder to this Court as a matter of right, and on 4 January 1991, this Court granted defendant's motion to bypass the Court of Appeals on his appeal of the noncapital convictions.

In his appeal defendant raises eleven issues. We find that defendant's trial was free of prejudicial error.

Defendant and the victim met in 1981 and lived together "off and on" until the victim's death in April 1989. About a month prior to the victim's death, defendant and the victim were living together in a home with their child Natasha, who was born in 1983, and with the victim's two children from a previous marriage. Defendant moved out of their home in March 1989 and moved into his mother's mobile home. However, defendant did not move all of his possessions out of the house he had shared with the victim and continued to spend some nights there with her after he moved out of the home. On 9 April 1989, Barry Mills, Jr., the victim's brother, moved into the home she and defendant had shared.

Mills testified that when he was living with the victim during the week of April 9-14 defendant called the victim many times on the telephone, and they argued during the conversations. Over defendant's objection, Mills further testified that the victim told him "that she wished that Vernon Garner would leave her alone, that the relationship as far as she was concerned had . . . ended, and that she just wanted to be left alone by him so that she could do what she had to do for herself and her life and for her children." Mills related, over defendant's objection, that on 14 April he and the victim had taken defendant's daughter to spend the

weekend with defendant and that the victim told defendant "that she did not wish to talk with him."

After leaving their daughter Natasha with defendant at his mother's home, the victim and her brother went to the Party Time Lounge about 7:20 p.m. on 14 April. The victim would on occasion work as a waitress at the Party Time Lounge which was owned by Barbour. While the victim was at the lounge, defendant called and asked Barbour if he could speak with the victim. Defendant testified that he called the victim to tell her that their daughter was sick and that the victim told him that she would talk to him later when the lounge closed.

After the lounge closed, about 2 a.m. on the morning of 15 April, Barbour, David Sperling, Jennifer Shatterly, and the victim went to Barbour's mobile home which was beside the lounge. Barbour cooked a meal for the group while the other three talked. The telephone rang, Barbour answered it, and defendant asked to speak to the victim. Barbour testified, over defendant's objection, that the victim came to the telephone and told defendant "to leave her alone and not call her anymore."

After the group finished eating, Barbour, Sperling, and the victim remained seated at the kitchen table, and Shatterly fell asleep on the living room couch. Barbour, Sperling, and Shatterly all testified that defendant, holding a sawed-off .410 shotgun, came in the front door of the mobile home without knocking and asked the victim to go outside with him. Barbour testified that defendant told Barbour and Sperling to get on the floor or he would kill them. Barbour further testified that the victim resisted going with defendant and told him that she was not going with him, but defendant grabbed the victim's arm and "sort of half way threw her out the door." Barbour testified that after defendant and the victim left the mobile home, he went to his bedroom and got a gun and told Sperling to call 911. After Barbour heard a shot, he looked out of the window of the mobile home and saw defendant and the victim standing next to each other in the center of the parking lot located between his mobile home and the Party Time Lounge. Barbour opened the front door of the mobile home and saw that defendant and the victim were still talking in the parking lot. Barbour saw the victim move toward defendant and saw defendant hit the victim in the mouth and face with the shotgun. She fell to the ground. According to Barbour, defendant reached down and

grabbed the victim's ankle, the victim reached up, and the gun fired. Barbour testified that after the .shot was fired, defendant walked toward the mobile home and, as he was reloading his shotgun, he told Barbour that Barbour could have the victim. Barbour got down on the floor of the mobile home when he realized that defendant was getting ready to fire the shotgun. A shot was fired through a window into the mobile home. After Barbour heard defendant walking away, he went out to assist the victim and saw defendant driving away.

A sheriff's deputy and an ambulance arrived shortly after defendant left. The victim told the officer that her stomach was hurting, and when the officer asked the victim if she had been shot, the victim replied, "No." The ambulance took the victim to the hospital where she died about thirty minutes later as a result of a gunshot wound to her upper abdomen which caused massive internal bleeding.

Defendant testified that he left his mother's home about 2 a.m. that night and went to the victim's house to look for her to tell her about their sick child. Defendant found that the victim was not at her home, but he saw her car in the parking lot at the Party Time Lounge which was next to Barbour's mobile home. Defendant testified that he had his shotgun with him because he had received a threatening telephone call in early April warning him to leave the victim alone.

Defendant testified that after seeing the victim's car near Barbour's mobile home, he got his shotgun and walked up to the door of the mobile home. According to defendant, he knocked on the door and Barbour told him to come inside. Defendant said that the victim asked him what he was doing there, and he told her that he wanted to talk with her and asked her to go outside with him. Defendant testified that he kept the shotgun pointed at the ground and did not threaten Barbour or Sperling or tell them to get on the floor. Defendant further testified that the victim willingly went outside with him to the parking lot and that he did not grab her or push her out of the door.

When they got outside, defendant said that the victim began pushing and hollering at him and that she suddenly grabbed his shotgun. Defendant explained that the first shot was fired accidentally when he was trying to move the shotgun away from the victim and they both fell over a telephone pole used in the parking

lot to mark the spaces. According to defendant, the second shot was fired when the victim again reached for the shotgun and defendant pulled back, accidentally discharging the gun. Defendant testified that the victim did not act like she had been hit and he decided that she was not interested in talking so he decided to leave and walked back to his truck. Defendant further testified that he did not know that the victim had been shot until he was arrested and that he did not remember firing the gun a third time into Barbour's mobile home.

[1] Defendant's first issue concerns certain hearsay statements admitted under North Carolina Rule of Evidence 804(b)(5) during the testimony of the victim's brother Mills. On 27 December 1989, the State served defendant with notice that the State intended to offer the victim's hearsay statements to Mills into evidence. Specifically, the notice provided that the State intended to introduce the victim's statements to Mills that defendant had been calling her and defendant was harassing and bothering her through these telephone calls. Defendant contends that the State's notice was inadequate and that the admission of this testimony did not meet the requirements set out in *State v. Triplett*, 316 N.C. 1, 340 S.E.2d 736 (1986).

North Carolina Rule of Evidence 804(b)(5) provides as follows:

Other Exceptions.—A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it gives written notice stating his intention to offer the statement and the particulars of it, including the name and address of the declarant, to the adverse party sufficiently in advance of offering the statement to provide the adverse party with a fair opportunity to prepare to meet the statement.

N.C.G.S. § 8C-1, Rule 804(b)(5) (1988). *Triplett* sets out a six-part test for the admission of hearsay testimony under Rule 804(b)(5).

STATE v. GARNER

[330 N.C. 273 (1991)]

After examination of the transcript, which shows the detailed findings and conclusions made by the trial judge prior to admitting Mills' testimony, we find no reversible error.

Under the *Triplett* test, the trial judge must first "determine that the proponent of the hearsay provided proper notice to the adverse party of his intent to offer it and of its particulars." 316 N.C. at 9, 340 S.E.2d at 741. As noted above, it is not disputed that on 27 December 1989, three working days before the trial was scheduled to begin, the State served notice of its intent to use this testimony. Defendant contends that the notice was inadequate because it only stated that Mills would testify that the victim told him that defendant had been calling her and that he was harassing her and bothering her through these telephone calls. According to defendant, this notice did not contain any details, substance, or particulars of the statement the State actually introduced into evidence in Mills' testimony. Defendant also contends that the notice was untimely. However, defendant made no motion to continue based on insufficiency or untimeliness of the notice and did not assert that he was surprised by the evidence. Nor did he argue this point when the trial judge asked if he wished to be heard further on his objection to the testimony.

A review of the transcript reveals that defendant admitted that the notice was sufficient. The following exchange took place between defendant's attorney and the trial judge:

COURT: So you—you do acknowledge that you got notice pursuant to 804 that the State intended to use this hear—use this statement of—as Mr. Mills stating what Debbie Brown told him?

MR. MONROE: Just a moment and I'll—If I could see that? Yes, sir.

COURT: All right. So for—the State did serve you notice pursuant to 804(b)(5) that they intended to use this—statement. Do you wish to be heard further?

MR. MONROE: No, Sir,

Under these circumstances, we conclude that defendant's failure, after invitation from the bench, to restate his objection or further argue the adequacy and timeliness of the notice waives any right to bring this issue forward on appeal. N.C.R. App. P. 10(b)(1).

**[2]** Defendant also contends that Mills' testimony was not properly admitted because the trial judge failed to make findings of fact about the probativeness of the statement. *Triplett* requires that the trial judge must consider whether the evidence is more probative on the point than any other evidence which could be produced through reasonable efforts. 316 N.C. at 9, 340 S.E.2d at 741. Prior to the admission of this evidence, the trial judge conducted a voir dire hearing and made findings of fact in keeping with the requirements set out in *Triplett* and concluded that the testimony was admissible. On the issue of probativeness, the trial judge found that the declarant—the victim—was unavailable, that the statements were evidence of a material fact, and that the statement was more probative on the fact than any other evidence which the State could procure through reasonable efforts. We conclude that the trial judge's conclusions were stated with sufficient detail and were adequately supported by the evidence. The declarant, the deceased victim, was unavailable. In such a case, according to *Triplett*, the necessity for the use of hearsay testimony is greater than in cases involving Rule 803(24) where the declarant does not have to be unavailable. Thus, the inquiry "may be less strenuous" in Rule 804(b)(5) cases such as this one than in Rule 803(24) cases. *Id.*

Defendant also contends that the trial judge failed to conclude whether the hearsay was specifically covered elsewhere. *Triplett* does require that the trial judge "determine that the statement is not covered by any of the exceptions listed in Rule 804(b)(1)-(4)." *Id.* While the trial judge's findings of fact did not specifically provide that the evidence was not covered by any other exception found in Rule 804, the State offered the evidence under Rule 804(b)(5) and did not argue at trial that any other exception applied. Furthermore, defendant's attorney made the following argument in his objection to this testimony:

> MR. MONROE: It's hearsay, if your Honor please. Again, we submit, not covered by any exception . . . . Not covered specifically under 803 exception or 804 exception, if your Honor please.

Thus, defendant's attorney based his argument on the fact that this evidence was not covered under any hearsay objection. Even assuming that the trial court erred by failing to meet this requirement of *Triplett* by not specifically finding that this evidence was not covered by any other exception, the error was not prejudicial since defendant's attorney specifically argued that the evidence

was not covered by any other exception and the State offered it under the catchall and made no argument that the evidence was admissible under any other exception.

[3] Defendant also contends that the trial court's conclusion that the statements possessed equivalent circumstantial guarantees of trustworthiness is erroneous as a matter of law. As the basis for this argument, defendant argues that the victim's statements were unreliable because they were uncorroborated and because the victim effectively recanted them by all her acts and deeds. In *Triplett* this Court set out some factors which are to be considered in determining whether a hearsay statement admitted under Rule 804(b)(5) possesses sufficient indicia of trustworthiness. The factors are:

> (1) assurances of the declarant's personal knowledge of the underlying event; (2) the declarant's motivation to speak the truth or otherwise; (3) whether the declarant recanted the statement; and (4) the practical availability of the declarant at trial for meaningful cross-examination.[1]

*Id.* at 10-11, 340 S.E.2d at 741-42 (quoting *State v. Smith*, 315 N.C. 76, 337 S.E.2d 833 (1985) (footnote added). We have no difficulty with the fourth factor because the declarant, the victim in this case, is deceased and therefore not available for cross-examination.

An assessment of the remaining three factors suggests that the trial court correctly admitted the victim's statements as revealed in Mills' testimony: (1) the underlying events were clearly within the personal knowledge of the victim because they related to the immediate relationship between the victim and defendant, the father of her child; (2) the statements were made to the victim's brother, Mills, who was living in the home and had heard numerous conversations between the victim and defendant — conversations which were consistent with the victim's statement to Mills about the nature of her relationship with defendant; and (3) the victim did not recant her statements. Defendant argues that by continuing to call him for assistance with the children and by continuing to

---

1. In *State v. Nichols*, 321 N.C. 616, 624, 365 S.E.2d 561, 566 (1988), the fourth factor is reworded as follows: "(4) the reason, within the meaning of Rule 804(a), for the declarant's unavailability." Significantly, this rewording clarifies the purpose of this factor, which is to encourage trial courts to assess the reason for the declarant's unavailability.

associate with him, the victim effectively recanted her statement that she wished that defendant would leave her alone. However, these actions do not prove recantation, but are a part of the circumstances to be weighed in determining whether the statements are likely to be true. Based on our assessment of these factors in the instant case, we hold that the trial court did not err in finding and concluding that the victim's statement as contained in Mills' testimony possessed sufficient circumstantial guarantees of trustworthiness to be admitted under Rule 804(b)(5).

[4] Defendant further argues that the trial judge erred in admitting Mills' testimony about the victim's statements to defendant on 14 April that she did not want to talk to defendant and that she was just delivering their daughter. Defendant asserts that this statement was hearsay and not admissible under any exception and that the trial court's summary evidentiary ruling was erroneous as a matter of law. We conclude that this evidence was in substance already before the jury from the testimony which Mills had given concerning the relationship between the victim and defendant. Thus, any error in admitting the victim's statement of 14 April was not prejudicial since there is no reasonable possibility a jury would have reached a different result had the court excluded this evidence. N.C.G.S. § 15A-1443(a) (1988); see also State v. Faucette, 326 N.C. 676, 687-88, 392 S.E.2d 71, 77 (1990).

[5] Defendant's second issue involves the testimony of witness Barbour concerning a statement made by the victim while talking to defendant on the telephone in Barbour's presence shortly before the murder. Barbour testified that the victim told defendant "to leave her alone and not call her anymore." Following a voir dire hearing, the trial court concluded that the statement was trustworthy, material, not covered elsewhere, that it was more probative than any other competent evidence available, and that the State had satisfied Rule 804(b)(5)'s unavailability, notice, and interest of justice requirements. Defendant makes essentially the same arguments regarding the admission of this statement as the arguments made in reference to issue one. We conclude, for the same reasons stated in our analysis of issue one, that the trial judge did not err in admitting witness Barbour's testimony regarding the statement made by the victim to defendant.

[6] In his third issue, defendant contends that the trial court erred by permitting Jennifer Shatterly to testify regarding a state-

ment made to her by the victim on the night of the murder. Shatterly testified that while she was in the room in Barbour's trailer, she heard the victim talking to defendant on the telephone, that the victim was cussing, and "[t]hey were fussing to each other." Immediately following the telephone call, the victim told Shatterly that defendant had called the victim a "slutty whore." Defendant contends this testimony was inadmissible hearsay because it concerned an out-of-court statement offered in evidence to prove the truth of the matter asserted.

While we are not convinced that either the statement from defendant to the victim or the statement from the victim to the witness was offered for the truth of the matter asserted, assuming *arguendo* that defendant is correct, we find admission of the statement not prejudicial. Immediately preceding this testimony, there was testimony from the witness that the defendant and victim were "[cussing] . . . and fussing to each other." The statement at issue merely fleshed out the witness' previous statement. We do not believe defendant has met his burden of showing that but for the admission of this statement there is a reasonable possibility the jury would have reached a different verdict. N.C.G.S. § 15A-1443(a).

[7] Defendant's fourth argument is that he is entitled to a new trial because the trial court erroneously allowed the prosecutor to delve into details of three prior convictions: two involving assaults against the victim; one involving an assault against David Overman. Defendant also complains that the trial court erred by allowing the prosecutor to require defendant to read from the underlying arrest warrants. While it may have been improper to require defendant to read from the arrest warrants, we hold that the *substance* of the testimony was admissible.

On cross-examination, defendant was questioned in detail about two assault convictions against the victim during 1985. Specifically, defendant was required to read from the two arrest warrants involving these convictions. One of the warrants charged defendant with "striking her about the mouth and nose and left eye with his hand"; the other warrant with "hitting her with his fist causing her to seek emergency treatment requiring stitches to her mouth." Defendant also testified on cross-examination that he had pled guilty to assault in 1989 for inflicting serious injury upon Mr. Overman. The prosecutor handed defendant the underlying arrest warrant

in that case and asked defendant, "Weren't you accused of using a lock-blade knife to assault and inflict serious injury upon David Overman?" After defendant's objection was overruled, the prosecutor continued: "By cutting him on his face, chest, and back, opening wounds [requiring] approximately 100 stitches to close at the Alamance County Hospital of Burlington?" Over objections, defendant responded: "That's what this states."

Defendant argues that requiring him to read from the underlying arrest warrants violates this Court's holding in *State v. Williams*, 279 N.C. 663, 185 S.E.2d 174 (1971), that a defendant may not be impeached with *accusations* of other crimes. Defendant also argues that the State's questions exceeded the scope of proper inquiry under North Carolina Rule of Evidence 609(a).

The State argues that, on direct examination, defendant acknowledged pleading guilty to two charges of assaulting the victim. On cross-examination, defendant even volunteered his version of the events surrounding one of these two assaults. Defendant also testified on direct examination concerning his general good character and devotion to his wife and child, suggesting that the victim was the troublemaker in their relationship. Defendant also testified that he received an honorable discharge from the armed services and once rescued a man by pulling him from a fire. As the State argues in its brief, defendant's testimony "portrays himself as the calm, cool headed, and nonbelligerent individual and Debbie as the hotheaded troublemaker." Thus, argues the State, the prosecutor was free to impeach defendant's good character evidence by going into details of the prior assaults.

Admissibility of prior convictions to impeach the credibility of a witness is governed by North Carolina Rule of Evidence 609(a):

(a) *General Rule*—For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime punishable by more than 60 days confinement shall be admitted if elicited from him or established by public record during cross-examination.

N.C.G.S. § 8C-1, Rule 609(a) (1988). Questions concerning these convictions must be confined, however, to a "limited inquiry into the time and place of conviction and the punishment imposed." *State v. Finch*, 293 N.C. 132, 141, 235 S.E.2d 819, 825 (1977). Although *Finch* is a pre-Rules case, its limitations on inquiries concerning

prior convictions are consistent with Rule 609(a). Thus, the prosecutor's questions regarding defendant's prior convictions, limited to time, place and punishment, were proper under Rule 609(a) for purposes of impeachment. Defendant is correct, however, that the prosecutor's questions went beyond these limited *Finch* inquiries; nevertheless, we hold that these additional inquiries were proper under Rules 404(a)(1) and 405(a).

Rule 404 reads, in pertinent part:

(a) *Character evidence generally*—Evidence of a person's character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) *Character of accused*—Evidence of a pertinent trait of his character offered by an accused, or the prosecutor to rebut the same . . . .

N.C.G.S. § 8C-1, Rule 404 (1988).

Rule 405 reads, in pertinent part:

(a) *Reputation or opinion*—In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. *On cross-examination, inquiry is allowable into relevant specific instances of conduct* . . . .

N.C.G.S. § 8C-1, Rule 405 (1988) (emphasis added).

Rule 404 is a limited codification of the long-established principle that once a defendant in a criminal case "puts his character in evidence," the prosecution may offer evidence of a defendant's bad character. *State v. Gappins*, 320 N.C. 64, 69-70, 357 S.E.2d 654, 658; *see also* 1 Henry Brandis Jr., *Brandis on North Carolina Evidence* § 104 (3d ed. 1988). As stated in *Gappins*, however, Rule 404(a)(1) limits the admission of character evidence to "pertinent traits" of character. *Id.* Rule 405, in contrast to the common law, specifically allows the prosecutor to cross-examine a witness concerning relevant, specific instances of conduct. *Id.* at 70, 357 S.E.2d at 658.

In this case, defendant "put his character in evidence" during direct examination by testifying in detail about himself and his relationship with the victim. Specifically, defendant painted a picture of himself as a level-headed, peaceful individual who constantly

was fending off verbal and physical attacks from the victim. It was therefore proper for the prosecutor to cross-examine defendant concerning this "pertinent" trait of character. We hold that the trial court did not err by allowing the prosecutor to elicit details of the prior assaults to rebut defendant's direct testimony.

Our holding is also consistent with two other well-established principles of law. The first principle is expressed in a pre-Rule case, *State v. Albert*, 303 N.C. 173, 277 S.E.2d 439 (1981), as follows:

> [T]he law wisely permits evidence not otherwise admissible to be offered to explain or rebut evidence elicited by the defendant himself. Where one party introduces evidence as to a particular fact or transaction, the other party is entitled to introduce evidence in explanation or rebuttal thereof, even though such latter evidence would be incompetent or irrelevant had it been offered initially. (Citations omitted.)

*Id.* at 177, 277 S.E.2d at 441. The second is explained by this Court in *State v. Warren*, 327 N.C. 364, 395 S.E.2d 116 (1990):

> Generally, much latitude is given counsel on cross-examination to test matters related by a witness on direct examination. *State v. Burgin*, 313 N.C. 404, 329 S.E.2d 653 (1985). The scope of cross-examination is subject to two limitations: (1) the discretion of the trial court; and (2) the questions offered must be asked in good faith. *State v. Dawson*, 302 N.C. 581, 585, 276 S.E.2d 348, 351 (1981). Furthermore, the questions of the State on cross-examination are deemed proper unless the record discloses that the questions were asked in bad faith. *Id.* at 586, 276 S.E.2d at 352.

*Id.* at 373, 395 S.E.2d at 121-22.

Defendant also argues that the trial judge erred by allowing the prosecutor to require defendant to read from the arrest warrants. Defendant cites *State v. Williams*, 279 N.C. 663, 185 S.E.2d 174, to support his argument. In *Williams*, the defendant was impeached by evidence that he had been indicted for crimes other than the one for which he was on trial. Here, defendant had admitted pleading guilty to the crimes prior to being questioned about the arrest warrants. Nevertheless, we believe that the better practice is to limit cross-examination of prior instances of conduct to leading questions concerning the conduct itself, rather than requiring a defendant to read to the jury the accusations contained in

an arrest warrant. In any event, because the same details could have been elicited through proper leading questions, the defendant here can show no harm.

[8] Defendant's fifth argument is that he is entitled to a new trial because the trial court permitted the prosecutor to conduct what defendant terms an insulting cross-examination. On direct examination, defendant was asked whether or not he remembered firing into the mobile home, and defendant answered, "I don't remember." On cross-examination, as defendant explained how he entered Barbour's mobile home, the district attorney repeatedly asked, over numerous objections, why defendant could remember some details about the incident but could not remember "shooting into the end of the trailer[.]" Given the broad discretion accorded the trial court in the control of the scope and the course of cross-examination, we find no abuse of discretion. See generally State v. Warren, 327 N.C. 364, 395 S.E.2d 116.

[9] Defendant's sixth contention is that he is entitled to a new trial in the first-degree burglary case because the trial court refused to submit to the jury a possible verdict of misdemeanor breaking or entering. Defendant asserts that the evidence shows that he had no felonious intent when he entered the mobile home, only that he wanted to talk to the victim. Defendant specifically denied that he had any intent to restrain, kill, terrorize, or harm the victim in any way when he went to the trailer, and insists that his entry was consensual. The trial court denied defendant's request to submit to the jury the lesser included offense instruction of misdemeanor breaking or entering and instead instructed the jury that it could find defendant guilty of first-degree burglary or not guilty. We conclude that the trial court's instructions were not erroneous.

Defendant's reliance on the following cases as supporting his contention that the lesser included offense of misdemeanor breaking or entering should have been submitted in this case is misplaced since there was no evidence of misdemeanor breaking or entering. State v. Williams, 314 N.C. 337, 333 S.E.2d 708 (1985) (no error in not submitting lesser included offenses of first-degree rape since the defendant's statement did not amount to a denial of penetration and there was no evidence to support a lesser included offense; also, no error in not submitting misdemeanor breaking or entering where defendant's statement did not create a conflict as to whether

STATE v. GARNER

[330 N.C. 273 (1991)]

defendant intended to commit a felony when he entered the victim's mobile home); *State v. Strickland*, 307 N.C. 274, 298 S.E.2d 645 (1983) (no error in not submitting second-degree murder where *no evidence* to support it); *State v. Jones*, 304 N.C. 323, 283 S.E.2d 483 (1981) (no error not to submit second-degree rape or second-degree sexual offense even though evidence was conflicting on the presence of a shotgun since there was *no evidence* defendant used any force other than the shotgun); *State v. Drumgold*, 297 N.C. 267, 254 S.E.2d 531 (1979) (new trial granted in first-degree rape case because the trial court failed to submit lesser included offense of second-degree rape where evidence was conflicting as to whether the defendant had a gun on date of offense and *defendant presented evidence* from which the jury could have found that victim submitted out of fear or duress).

A well-established principle of law is that a trial judge must instruct the jury as to a lesser-included offense of the crime charged when there is evidence from which the jury could find that the defendant committed the lesser offense. *State v. Redfern*, 291 N.C. 319, 321, 230 S.E.2d 152, 153 (1976). When any evidence presented at trial would permit the jury to convict defendant of the lesser included offense, the trial court must instruct the jury regarding the lesser included offense. Failure to so instruct the jury constitutes reversible error not cured by a verdict of guilty of the offense charged. *State v. Whitaker*, 316 N.C. 515, 520, 342 S.E.2d 514, 518 (1986). The key to submission of a lesser included offense is whether there is evidence to support it. *State v. Robinson*, 330 N.C. 1, 409 S.E.2d 288 (1991); *State v. Arnold*, 329 N.C. 128, 404 S.E.2d 822 (1991).

Here, there was no evidence to support misdemeanor breaking or entering. The State's evidence tended to show that defendant forcibly entered the dwelling house of another, while persons were in actual occupation of the dwelling, in the nighttime, with the intent to commit a felony therein. If the State's evidence is believed, defendant is guilty of first-degree burglary. Defendant's evidence tended to show that he knocked on the door, entered the mobile home with permission of the occupant of the dwelling, and that the victim voluntarily accompanied him outside. If defendant's evidence is believed, he is not guilty of burglary, misdemeanor breaking or entering, or any other crime. Thus, the trial judge correctly instructed the jury that it could find defendant guilty of first-degree burglary or not guilty. There was no error in failing

to submit a possible verdict of misdemeanor breaking or entering since there was no evidence to support this offense.

[10] Defendant's seventh issue involves the trial court's instructions to the jury on theories of guilt in the felony murder and burglary cases. Specifically, defendant argues that there was no evidence to support the trial court's instructions that defendant committed the underlying kidnapping felony for the purpose of terrorizing the victim or that defendant did not release the victim in a safe place. Under the court's instructions, the jury could find defendant guilty of first-degree burglary if it found that defendant broke and entered the mobile home with the intent to commit the crime of kidnapping. Kidnapping was also the underlying felony in the charge of first-degree murder based on the felony murder rule. Thus, instructions which permitted the jury to find that defendant committed the kidnapping for the purpose of terrorizing the victim or that defendant did not release the victim in a safe place would constitute error if unsupported by the evidence. We conclude that the evidence supports both jury instructions.

Defendant contends that there was no evidence that he kidnapped the victim for the purpose of terrorizing her or that he had an intent to do so at the time he broke and entered the mobile home. The evidence, when viewed in the light most favorable to the State, clearly belies defendant's contention. The evidence showed, *inter alia*, that defendant forced his way into the trailer and forced the victim at gunpoint to accompany him against her will. One witness testified that from fifteen to thirty to forty-five minutes elapsed between the time the victim left the trailer and when the first shot was heard. According to Charles Barbour, as defendant faced the victim in the parking lot, the victim was hollering and screaming for him to leave her alone. Some time elapsed before defendant fired the first shot. Defendant cocked, breached, or loaded his gun and struck the victim in the mouth with the butt of the shotgun and then across the face with the barrel end, knocking her to the ground. He then fired a shotgun blast into the victim as he held the victim's ankle in one hand and the shotgun in the other. Reasonable jurors could find that defendant kidnapped the victim for the purpose of terrorizing her.

Defendant further argues that the evidence fails to show that he did not release the victim in a safe place. We disagree. In *State v. Jerrett*, 309 N.C. 239, 307 S.E.2d 339 (1983), this Court

held that the release in a safe place portion of the statute required a conscious, willful action on the part of the defendant to assure that his victim is released in a place of safety. *Id.* at 262, 307 S.E.2d at 351. Here, defendant removed the victim from the trailer while holding a shotgun. He fired a shotgun blast into her body at close range, while discussing their relationship in the empty lounge parking lot in the early morning hours. He then walked to his vehicle, on the way firing a third shell into the trailer, and drove off, shouting, "You can come and get her now. She's yours." These actions do not indicate a conscious act on the part of the defendant to assure that his victim was released in a safe place. To the contrary, his actions demonstrate a conscious disregard for the victim and her safety. Thus, the evidence supports the trial court's instructions on this element of the offense.

[11] In defendant's eighth issue, he argues essentially that the trial judge erred by not instructing the jury that in order to convict the defendant of kidnapping, the jury must find that the removal of the victim from the trailer was "a separate, complete act, independent of and apart from the murder." N.C.P.I.—Crim. 210.25 (1990). Because kidnapping was the underlying felony which supported both the felony-murder and first-degree burglary convictions, defendant argues that he is entitled to a new trial in each case.

Defendant bases his argument on this Court's reasoning in *State v. Prevette*, 317 N.C. 148, 345 S.E.2d 159 (1986). In *Prevette*, the victim died from suffocation after being bound and gagged. The Court held that it was improper to convict the defendant of both kidnapping and murder because the "restraint essential to the kidnapping conviction was an inherent and inevitable feature of this particular murder." *Id.* at 157, 345 S.E.2d at 165. The Court vacated the kidnapping conviction because to convict the defendant of murder and kidnapping would implicate defendant's double jeopardy rights. *Id.* at 158, 345 S.E.2d at 166.

Our case is clearly distinguishable. Here, the kidnapping charge was premised on the victim being removed from the mobile home. The victim's removal from the mobile home preceded the murder. Simply stated, defendant could have easily killed the victim in the mobile home, but instead removed her at gunpoint to the parking lot prior to the killing. Unlike *Prevette*, the removal of the victim in this case was not an inherent and inevitable feature of the murder.

Based on the facts of this case, therefore, the trial judge was not required to instruct the jury that it must find the kidnapping to be separate and apart from the murder. The facts of this case, unlike *Prevette*, do not raise the possibility that defendant could be convicted twice for the same act.

[12]   We find defendant's ninth issue, that the trial court erroneously instructed the jury on theories of guilt that were not supported by the evidence, to be without merit. The trial court instructed the jury that it could infer the first-degree murder elements of premeditation and deliberation from the following circumstances:

> Neither premeditation nor deliberation is usually susceptible of direct proof. They may be proved by proof of circumstances from which they may be inferred, such as the lack of provocation by the victim, conduct of the defendant before, during, and after the killing, threats and declarations, use of grossly excessive force, infliction of lethal wounds after the victim is felled, brutal or vicious circumstances of the killing, or manner in which or means by which the killing was done.

Defendant contends that the instruction was improper because there was "absolutely no evidence" to support a finding that defendant used grossly excessive force or inflicted lethal wounds after the victim was felled.

It is well settled that instructions are not improper if based upon "some reasonable view of the evidence." *State v. Buchanan*, 287 N.C. 408, 421, 215 S.E.2d 80, 88 (1975). *See also State v. Zuniga*, 320 N.C. 233, 262, 357 S.E.2d 898, 917 (1987) (instruction proper if supported by competent evidence). Charles Stephen Barbour testified that he saw defendant strike the victim with the butt of the shotgun followed by a strike to her face with the barrel end. The blows knocked her to the ground. After the victim fell, defendant grabbed her left ankle with his left hand, and the gun discharged. We believe that such action, involving a killing by a shotgun blast so close to the victim, constitutes grossly excessive force. Given this testimony, we conclude that there was competent evidence to support the instruction.

[13]   In his tenth issue, defendant argues that he is entitled to a new trial because the trial court's "highest legal aim" jury instruc-

tion was erroneous as a matter of law. We find this position to be meritless. The trial court instructed the jury verbatim from the pattern instruction as follows:

> Now, ladies and gentlemen, the highest aim of every legal contest is the ascertainment of the truth. Somewhere within the facts of every case the truth abides, and where truth is, justice steps in garbed in its robes and tips the scales. In this case you have no friend to reward, you have no enemy to punish, you have no anger to appease, or sorrow to assuage. Yours is the solemn duty to let your verdict speak the everlasting truth.

Defendant contends this instruction permitted the jurors to convict him without proof beyond a reasonable doubt, which effectively deprived him of the presumption of innocence. Defendant argues that if the State fails to prove the defendant guilty beyond a reasonable doubt, the "truth" is irrelevant. According to defendant, this instruction improperly shifted the jury's focus from determining guilt beyond a reasonable doubt to determining the truth.

Judge Allen's instructions came verbatim from the criminal Pattern Jury Instructions. See N.C.P.I.—Crim. 101.36. Prior to that instruction, as part of his charge, Judge Allen instructed that "[t]he State must prove to you that the defendant is guilty beyond a reasonable doubt." The court then defined "reasonable." Moreover, Judge Allen repeated the reasonable doubt standard throughout the jury charge. Clearly, the record is replete with the trial court's instructions to the jury on reasonable doubt. When construed as a whole, no reasonable juror would have been misled. See State v. Bailey, 280 N.C. 264, 185 S.E.2d 683, cert. denied, 409 U.S. 948, 34 L. Ed. 2d 218 (1972). We conclude that defendant establishes no possibility that the trial judge confused the jurors concerning the reasonable doubt standard, and we reject his assignment of error.

[14] Defendant's final contention is that he is entitled to a new trial in the burglary case because he could not waive indictment, and the trial court instructed the jury on a theory not charged in the indictment. Defendant argues in support of this contention that on 3 May 1989 he was indicted for first-degree burglary with the intent to commit murder as the only felonious intent alleged. On 22 December 1989, the prosecutor filed a superseding information in the burglary charge alleging the additional felonious intent

STATE v. GARNER

[330 N.C. 273 (1991)]

to commit kidnapping. Defendant signed a waiver of indictment on the information, and during instructions on the burglary charge, the only theory the trial court submitted to the jury was that defendant intended to commit kidnapping. Defendant notes that an indictment may not be waived in a capital case. N.C.G.S. § 15A-642(b) (1988). He argues that if he could not waive indictment on the burglary charge because this was a "capital case," the trial court's submission of the kidnapping theory was not supported by the indictment, and he is entitled to a new trial.

We do not agree with defendant's assertion that the burglary charge was a "capital case." Joinder of the burglary charge for trial with the capital crime of murder in the first degree did not transform the burglary charge into a capital case as that term is used in N.C.G.S. § 15A-642(b). While some errors made in a trial where capital and noncapital charges are tried jointly may require a new trial on all charges, see State v. Mitchell, 321 N.C. 650, 365 S.E.2d 554 (1988), this does not turn a noncapital felony into a capital case in which indictment cannot be waived. Indictment or waiver occurs before trial and is a distinct, separate, and independent event in each case. If the legislature had intended to apply the no-waiver-of-indictment rule to noncapital felonies joined with a capital felony, it could easily have done so by adding that circumstance to the other circumstances in which a defendant may not waive an indictment. The legislature did not do so. As the State points out, "the nature of the capital charge requires the conscience of the community to consider a formal accusation of such against the defendant prior to trial." Here, defendant's interest in a noncapital charge is sufficiently protected without instituting a no-waiver-of-indictment rule, and the statute plainly provides otherwise. Because defendant could properly waive indictment as to the noncapital felony of first-degree burglary, this assignment of error is without merit.

For all of the above reasons, we conclude that defendant's trial was free of prejudicial error, and a new trial is not warranted.

No error.