An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of A p p e l l a t e     P r o c e d u r e .

NO. COA13-1144
NORTH CAROLINA COURT OF APPEALS

Filed: 20 May 2014

STATE OF NORTH CAROLINA

    v.

DORSEY ALPHONZO LEMON, JR.

Forsyth County
No. 11 CRS 57557

Appeal by Defendant from Judgment entered 10 August 2012 by Judge Richard W. Stone in Forsyth County Superior Court. Heard in the Court of Appeals 19 February 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Alexandra M. Hightower, for the State.*
>
> *Anne Bleyman for Defendant.*

STEPHENS, Judge.

*Procedural History and Evidence*

On 23 January 2012, Defendant Dorsey Alphonzo Lemon, Jr., was indicted on one count of robbery with a dangerous weapon. Defendant was tried during the 6 August 2012 Criminal Session of Forsyth County Superior Court. The evidence at trial tended to show the following:

Theodore Hardy operated a "drink house," where he sold alcohol, cigarettes, candy, and chips out of his home. Hardy was 73 years old, retired, and disabled. On 29 July 2011, Tyrone Carroll Woods visited Hardy and asked to borrow money. Hardy showed Woods, a frequent visitor, about $200 to $300 in cash, but refused to lend it to him. Woods sat with Hardy for ten to fifteen minutes watching television and then left.

Shortly thereafter, a man, later identified as Defendant, entered Hardy's house and said, "This is a robbery," while pointing a pistol at Hardy. Defendant had short dreadlocks and was wearing a green shirt. At one point Defendant shouted out the door to Woods, who was then sitting in a burgundy Chevrolet Malibu in front of the house, and asked whether he should use a "wire" on Hardy. This was the same burgundy Chevrolet Malibu that Melissa Yvette Porch had lent to Defendant about 2:30 p.m. earlier that day. Defendant took Hardy's wallet and demanded more money. When Hardy told him that he did not have any more money, Defendant made Hardy go into the bathroom. Hardy then heard Defendant rummaging around in his bedroom before coming back with a cut-up wire clothes hanger. Defendant put the wire between Hardy's fingers, threatening him in order to find more money. When Hardy refused, the man left the house.

At 3:49 p.m., Winston-Salem Police Department Corporals Eric Johnson and R.T. Phillips received a call about an armed robbery at Hardy's house. On his way to the scene, Cpl. Johnson passed a burgundy Chevrolet Malibu traveling in the opposite direction. The car turned into the entrance of Packaging Lines, Incorporated, a plant where worker Chris Allen Peele saw the car stop quickly at the loading area. It was approximately 4:00 p.m. when he saw the passenger, a black man with dreadlocks, wearing a green shirt, get out of the car, jump onto the dock, and run down the back side of the plant. Peele saw the man make a throwing motion as he ran past some pallets in the loading area.

When Cpl. Johnson pulled up to the car, there was no passenger inside. Woods, the man who had tried to borrow money from Hardy earlier, was sitting in the driver's seat next to a deposit bag that had a wallet with Hardy's identification in it and several cards Hardy later identified as his. A toy water pistol was also in the car.

At the same time, Porch received a call from Defendant, who told her she needed to pick up her car. Defendant also requested that Porch ask her friend to drive him to Porch's mother's house. When Porch arrived at the plant, she found her car surrounded by police.

In response to the robbery dispatch call, Cpl. Phillips began canvassing the neighborhood and observed Defendant, with short dreadlocks, wearing a green shirt, standing on the porch of a house later identified as belonging to Porch's mother. A car was leaving the driveway when Defendant went into the house and came out a few minutes later, sweating profusely. Cpl. Phillips searched and arrested Defendant.

Bowles, a forklift operator at Packaging Lines, Incorporated, found a gun on the floor between the pallets on the loading dock four days after the robbery occurred. Other employees had access to the area, but Bowles was the only person who moved pallets. Bowles took the gun to the plant manager, who then gave it to the Winston-Salem Police Department. The gun was a Lorcin 9 mm pistol with two rounds in it.

At the close of all the evidence, Defendant moved to dismiss the charge of robbery with a dangerous weapon, arguing that there was not substantial evidence of each essential element of the charge. The court denied that motion. The jury found Defendant guilty of robbery with a dangerous weapon. The jury found the existence of four aggravating factors, and Defendant was sentenced to 96 to 125 months in prison. Defendant appeals.

*Discussion*

Defendant argues that the trial court erred (1) in denying his motion to dismiss the charge of robbery with a dangerous weapon, (2) by instructing the jury on the doctrine of recent possession, and (3) in sentencing him based on four aggravating factors. We find no error.

*I. Motion to Dismiss*

Defendant first argues that there was insufficient evidence that he committed robbery with a dangerous weapon and, therefore, that his motion to dismiss should have been granted. We disagree.

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

> Upon [the] defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense. If so, the motion is properly denied.

*State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citation omitted), *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). The trial court must consider all evidence in the light most favorable to the State, "giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995).

In order to establish that Defendant committed robbery with a dangerous weapon, in violation of N.C. Gen. Stat. § 14-87(a), the State must prove the following essential elements: "(1) the unlawful taking or an attempt to take personal property from the person or in the presence of another (2) by use or threatened use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened." *State v. Small*, 328 N.C. 175, 181, 400 S.E.2d 413, 416 (1991) (citations omitted). "[W]here the instrument used [by the defendant] appears to be, but may not in fact be, a firearm or other dangerous weapon capable of endangering or threatening the life of another," our Supreme Court has laid out the following rules to be applied when determining whether the evidence of armed robbery is sufficient to be submitted to the jury:

> (1) When a robbery is committed with what appeared to the victim to be a firearm or

other dangerous weapon capable of endangering or threatening the life of the victim and there is no evidence to the contrary, there is a mandatory presumption that the weapon was as it appeared to the victim to be. (2) If there is some evidence that the implement used was not a firearm or other dangerous weapon which could have threatened or endangered the life of the victim, the mandatory presumption disappears leaving only a permissive inference, which permits but does not require the jury to infer that the instrument used was in fact a firearm or other dangerous weapon whereby the victim's life was endangered or threatened. (3) If all the evidence shows the instrument could not have been a firearm or other dangerous weapon capable of threatening or endangering the life of the victim, the armed robbery charge should not be submitted to the jury.

*State v. Allen*, 317 N.C. 119, 124-25, 343 S.E.2d 893, 897 (1986).

Defendant argues that the trial court erred in denying his motion to dismiss because there was insufficient evidence that he used or threatened to use a firearm or other dangerous weapon. Noting that the Lorcin 9 mm pistol was found at the packaging plant four days after the robbery, he argues that others had access to the area where the pistol was discovered and that Peele never saw Defendant throw a pistol, but instead only saw him make a throwing motion. Defendant also argues that there was evidence to suggest that the weapon used in the

robbery was actually a toy gun and not a firearm or other dangerous weapon. We are not persuaded.

Whether an instrument is a firearm or other dangerous weapon is judged by the victim of the robbery from the appearance of the instrument and the manner in which it is used. *State v. Thompson*, 297 N.C. 285, 288, 254 S.E.2d 526, 528 (1979). Here, the evidence shows that Defendant robbed Hardy in his home and brandished a handgun, which Hardy described as "blue steel" or a pistol dark in color. Hardy never qualified his description of the gun as potentially being fake; rather, he consistently identified it as a dark handgun. Additionally, Hardy testified that he was afraid because Defendant had the "weapon" during the robbery. Shortly thereafter, a witness saw Defendant run across a loading dock and make a throwing gesture toward the area where an employee later found a loaded gun. The fact that a real pistol was found close to where Defendant made the throwing motion supports Hardy's consistent testimony that Defendant used a real firearm at the time of the robbery. This constitutes substantial evidence that Defendant used or threatened to use a firearm or other dangerous weapon during the robbery. Accordingly, Defendant's argument that the evidence of a dangerous weapon was insufficient is overruled.

## II. Doctrine of Recent Possession

Second, Defendant argues that the trial court erred in instructing the jury on the doctrine of recent possession because the State did not prove that the stolen items were in Defendant's "custody and control to the exclusion of others, or that [Defendant] possessed the property recently after the theft." Again, we are unpersuaded.

This Court reviews a trial court's decision regarding jury instructions *de novo*. *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009). A jury instruction is proper if it is based on "some reasonable view of the evidence." *State v. Garner*, 330 N.C. 273, 295, 410 S.E.2d 861, 874 (1991) (citation omitted).

Under the doctrine of recent possession, possession of recently stolen property creates a presumption that the possessor stole the property. *State v. Maines*, 301 N.C. 669, 673, 273 S.E.2d 289, 293 (1981). "Although this doctrine is often applied in the context of larceny, it also applies to armed robbery." *State v. Lee*, 213 N.C. App. 392, 395, 713 S.E.2d 174, 177 (2011) (citation omitted). In order to raise the presumption that the possessor is guilty under the doctrine of recent possession, the State must prove that "(1) the property

described in the indictment was stolen; (2) the stolen goods were found in [the] defendant's custody and subject to his control and disposition to the exclusion of others . . . ; and (3) the possession was recently after the larceny [or robbery.]" *Maines*, 301 N.C. at 674, 273 S.E.2d at 293 (citations omitted).

Defendant argues that the State did not meet its burden to prove the second and third prongs of the doctrine of recent possession, exclusive and recent possession, because he was "never found in possession of the bag or wallet." Defendant's argument is without merit.

"Exclusive possession does not necessarily mean sole possession. Exclusive possession means possession to the exclusion of all persons not party to the crime." *State v. Foster*, 149 N.C. App. 206, 209, 560 S.E.2d 848, 851 (citation and internal quotation marks omitted), *cert. denied*, 355 N.C. 496, 564 S.E.2d 48 (2002). "There is no specific period . . . beyond which possession can no longer be considered 'recent.' Rather, the term is a relative one and will depend on the circumstances of each case." *State v. Wilson*, 313 N.C. 516, 536, 330 S.E.2d 450, 464 (1985) (holding that the defendant's possession of items two to four weeks after an armed robbery committed with a co-conspirator was sufficiently close in time

to be considered "recent"); *see* also *State v. Gonzalez*, 311 N.C. 80, 88, 316 S.E.2d 229, 233 (1984) (holding that the defendant's possession of stolen property within several hours was "recent").

The State's evidence shows that Cpl. Johnson followed Defendant's driver and accomplice, Woods, into Packaging Lines, Incorporated, and found him in the car that Defendant had borrowed from Porch only an hour and a half before the robbery took place. A witness saw a man matching Defendant's description jump from the passenger seat of the car, run down the back side of the plant, and make a throwing motion toward an area where a gun was found four days later. Items stolen during the robbery were next to Woods when police found them. The dispatch call to police from Hardy's house occurred at 3:47 p.m. Shortly after Cpl. Johnson received the call at 3:49 p.m., he intercepted the car described in the robbery. Defendant called Porch shortly after 4:00 p.m. and told her where to retrieve her car. Only a short period of time passed before Cpl. Phillips then located Defendant at Porch's mother's house and arrested him. The time from robbery to apprehension was less than one hour.

Woods and Defendant were the only people who had access to the stolen property in the brief period between when the robbery

took place and when the police followed the car at the plant and found the stolen property. Because Woods and Defendant acted in concert to commit the robbery, Defendant can be considered to have had exclusive possession of the stolen goods whether or not they were found in his actual possession. *See Foster*, 149 N.C. App. at 209, 560 S.E.2d at 851. The fact that the stolen property was recovered only minutes after it was stolen makes it sufficiently recent to be considered recent possession. Therefore, the State's evidence was sufficient to justify the trial court's jury instruction on the doctrine of recent possession. Defendant's argument is overruled.

*III. Sentencing*

Lastly, Defendant argues that the trial court erred in submitting the following three aggravating factors to the jury: (1) that the victim was very old, (2) that the victim was physically infirm, and (3) that the victim was handicapped.[1] Defendant argues that Hardy's age of 73 years was not sufficient to establish the "very old" aggravating factor. Additionally, Defendant argues that the trial court did not sufficiently

---

[1] Defendant stipulated to the fourth aggravating factor, admitting that he had violated his parole "during the 10-year period prior to the commission of the offense for which [Defendant was] being sentenced."

differentiate between the "physically infirm" and "handicapped" factors and therefore committed error. We disagree.

"When a defendant assigns error to the sentence imposed by the trial court, our standard of review is 'whether [the] sentence is supported by evidence introduced at the trial and sentencing hearing.'" *State v. Deese*, 127 N.C. App. 536, 540, 491 S.E.2d 682, 685 (1997) (quoting N.C. Gen. Stat. § 15A-1444(a1)). Section 15A-1340.16 states:

> (a) . . . The court shall consider evidence of aggravating or mitigating factors present in the offense that make an aggravated or mitigated sentence appropriate, but the decision to depart from the presumptive range is in the discretion of the court. . . .
>
> . . .
>
> (b) . . . If the jury, or with respect to an aggravating factor under [section] 15A-1340.16(d)(12a) or (18a), the court, finds that aggravating factors exist or the court finds that mitigating factors exist, the court may depart from the presumptive range of sentences specified in [section] 15A-1340.17(c)(2). If aggravating factors are present and the court determines they are sufficient to outweigh any mitigating factors that are present, it may impose a sentence that is permitted by the aggravated range described in 15A-1340.17(c)(4). If the court finds that mitigating factors are present and are sufficient to outweigh any aggravating factors that are present, it may impose a sentence that is permitted by the

> mitigated range described in [section] 15A-1340.17(c)(3).

N.C. Gen. Stat. § 15A-1340.16 (2013).

Defendant cites *State v. Hines*, 314 N.C. 522, 525, 335 S.E.2d 6, 8 (1985), for the proposition that "[a]ge should not be considered as an aggravating factor in sentencing unless it makes the defendant more blameworthy than he . . . already is as a result of committing a violent crime against another person." *Id.* This is true. However, the *Hines* opinion also states that "[i]n cases . . . involving victims near the beginning or end of the age spectrum, the prosecution may establish vulnerability merely by relating the victim's age and the crime committed." *Id.* at 526, 335 S.E.2d at 8 (finding the 62-year-old victim was not "very old"). In such a circumstance, it is not necessary for the State to show exactly *how* the defendant is more blameworthy. *See id.* In *Hines*, however, the victim was a 62-year-old man in good health who worked as a brick mason until the five years preceding his death. *Id.* The victim's retirement was due to a work-related injury and not because of his age. *Id.* Accordingly, the Court found that he was not "very old." *Id.*

Since *Hines*, our Supreme Court has stated that "[t]he vulnerability accompanying advanced age is not caused by physical disability alone, but encompasses the slowing of

reflexes and lessening acuity of senses which render older citizens relatively defenseless against predators looking for unprotected targets." *State v. Davis*, 325 N.C. 607, 633, 386 S.E.2d 418, 432 (1989), *cert. denied*, 496 U.S. 905, 110 L. Ed. 2d 268 (1990). In that case, a 70-year-old, physically infirm woman was murdered by the defendant who, through frequent visits to her nursing home, had learned that a stroke had left the woman with atrophied muscles and a limp, making her more vulnerable to attack. *Id.* at 613–15, 386 S.E.2d at 420–21. There the Court found that age, "discrete from that of the victim's physical infirmity, support[ed] the aggravation of the robbery by virtue of the victim's age." *Id.* at 633, 386 S.E.2d at 432.

Like the defendant in *Davis*, Woods had several opportunities to spend time with Hardy and assess his vulnerabilities. Unlike the victim in *Hines*, Hardy was not a healthy man at the time of the robbery. Hardy testified that he was disabled, walked with a cane, coughed, shook, and that walking around his home took him a very long time. While Hardy's physical limitations might speak to the aggravating factors of physical infirmity and being handicapped, they may also help draw a distinction between victims when considering the aggravating factor of advanced age. Accordingly, the trial court

did not err in submitting the aggravating factor of advanced age to the jury.

Defendant also argues that there was not enough distinction between the evidence that Hardy was both "physically infirm" and "handicapped" for those factors to be admitted separately to the jury. We need not resolve this question here.

Defendant stipulated to the fact that he had violated his parole within the 10 years preceding the current offense. In addition, we have already determined that the trial court properly submitted the age factor to the jury. The only mitigating factor the trial court found was that it appeared Defendant had a good support system. Whether the trial court erred in separately submitting the last two aggravating factors to the jury or not, the existing aggravating factors were sufficient for the trial court to determine, in its discretion, that the "good support system" mitigating factor was outweighed. *See* N.C. Gen. Stat. § 15A-1340.16; *see also State v. McDonald*, 163 N.C. App. 458, 463, 593 S.E.2d 793, 796 (holding that, according to N.C. Gen. Stat. § 15A-1340.16, it was within the discretion of the court to sentence a defendant in the maximum statutory range based on weighing the aggravating and mitigating

factors), *disc. review denied*, 358 N.C. 548, 599 S.E.2d 910 (2004). Therefore, we find no error.

NO ERROR.

Judges BRYANT and DILLON concur.

Report per Rule 30(e).