STATE OF NORTH CAROLINA v. STEVEN D. STAFFORD

No. COA01-532

(Filed 4 June 2002)

### 1. Evidence— leading question—reiteration of prior testimony

The trial court did not abuse its discretion in a first-degree murder prosecution when the State was allowed on direct examination to ask a leading question which referred to defendant shooting the victim. The State was simply reiterating and further developing the testimony already given by the witness.

### 2. Constitutional Law— reference to codefendant—sanitized statement—not prejudicial

The trial court did not err in a first-degree murder prosecution by allowing testimony and an out-of-court statement which excluded mention of a codefendant. Exclusion of the reference to the codefendant was required by *Bruton v. United States*, 391 U.S. 123; moreover, defendant was not prejudiced by the sanitized statement because it was not materially altered by deleting the reference.

### 3. Evidence— defendant's temper—question not prejudicial

There was no prejudicial error in a first-degree murder prosecution where the State improperly attempted to offer evidence of defendant's temper before he opened the door and put his character at issue, but defendant did not admit that he had a temper, the State did not elaborate further, and there was considerable evidence from which a jury could conclude that defendant was guilty of first-degree murder. N.C.G.S. § 8C-1, Rule 404(a).

### 4. Homicide— first-degree murder—no instructions on second-degree or involuntary manslaughter

The trial court did not err in a first-degree murder prosecution by not instructing the jury on second-degree murder or involuntary manslaughter where the State's evidence tended to show that defendant intentionally shot the victim and defendant offered evidence that he had not fired a gun on the night in question and that the gun used in the murder had never been in his possession. There was no evidence offered to support a finding of second-degree murder or involuntary manslaughter.

STATE v. STAFFORD

[150 N.C. App. 566 (2002)]

Appeal by defendant from judgment entered 11 August 2000 by Judge L. Oliver Noble in Mecklenburg County Superior Court. Heard in the Court of Appeals 21 February 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Jane Ammons Gilchrist, for the State.*

*Thomas Blackwood, for defendant-appellant.*

CAMPBELL, Judge.

Defendant appeals a judgment finding him guilty of first-degree murder under the first-degree felony murder rule. We find no error.

On 6 June 1998, defendant and two other men, one of whom was co-defendant Tamarus Davis ("Davis"), were playing basketball at Clemson Park in Charlotte, North Carolina. Angela Kirkpatrick ("Kirkpatrick") and her two daughters were also at the park that day and joined the three men for several games of basketball. Subsequently, the men followed Kirkpatrick back to her house to play cards and socialize. Defendant remained on the porch during most of the time he and the other men were at Kirkpatrick's house.

After spending several hours with Kirkpatrick and her daughters, defendant and Davis left to visit various other places before finally arriving at Davis' house sometime after midnight. While outside Davis' house, defendant and Davis saw Plevus Stewart ("Stewart") driving down the street and motioned for Stewart to stop his car. Both men spoke briefly with Stewart before getting into the car with him and driving around the block. Eventually, the men arrived on Kirkpatrick's street just as Josh Livingston ("Livingston"), a co-worker and friend of Kirkpatrick's, was backing his car out of Kirkpatrick's driveway. As Livingston pulled into the street, he came to a stop behind Stewart's car, which had stopped in the street. An occupant of Stewart's car exited and shot Livingston while he was sitting in his car. Stewart drove away from the scene. Defendant and Davis ran.

Kirkpatrick, who saw the shooting from her front porch, told investigators that she recognized defendant and Davis from their basketball game earlier that day. The following day (7 June 1998), defendant was arrested. The police searched defendant and found shotgun shells in his pocket. Defendant, Davis, and Stewart were all charged with the first-degree murder of Livingston.

On 7 August 2000, the defendant's case was called for trial in the Mecklenburg County Superior Court, Judge L. Oliver Noble presiding. At the trial, the State's evidence consisted of the following:

Kirkpatrick testified that she saw defendant get out of the driver's side of Stewart's car and shoot Livingston. She further testified that she recognized defendant by his clothing and his mannerisms.

Stewart testified for the State after the charges against him were dismissed. He testified that defendant held him at gunpoint and ordered him to drive to Kirkpatrick's house. Upon reaching Kirkpatrick's house, defendant and Davis exited the car with the gun. Stewart immediately drove away once the two men exited the car.

There was also testimony given by James Culp ("Culp"), an inmate at the Mecklenburg County Jail from 28 August 1997 until 6 May 1999. Culp testified that he and defendant met while in jail and had discussed the murder charge against defendant. During their discussion, defendant stated that: (1) defendant forced Stewart to take him to Kirkpatrick's house; (2) Stewart drove away after defendant got out of the car; and (3) defendant used a shotgun to kill Livingston.

Finally, the State offered testimony from a homicide investigator. The investigator testified that the spent shotgun shells found at the crime scene were identical to the shotgun shells found in defendant's pocket the day after the murder.

Defendant's evidence tended to show that he and Davis got into Stewart's car without the use of force or intimidation. Defendant got into the front passenger's seat, and Davis got into the back seat of the car. While in the car, Stewart began looking for marijuana and, in the process, pulled several shotgun shells out of his pocket. Stewart asked defendant to hold the shotgun shells while he continued looking for the marijuana. As Stewart drove past Kirkpatrick's house, he saw Livingston leaving and said, "[T]hat's that motherf—ker right there." Stewart stopped the car, exited the car, and approached Livingston's car. Defendant, a long-time friend of Livingston's, placed the shotgun shells in his pocket and also exited the car to prevent an altercation from ensuing. As Stewart raised the gun to shoot Livingston, defendant attempted to hit the gun away from him. Nevertheless, the gun went off. Defendant and Davis, who had gotten out of the car at that point, ran away in fear.

On 11 August 2000, the jury returned a verdict finding defendant guilty of first-degree murder under the first-degree felony murder rule. He was sentenced to life in prison without parole. Co-defendant Davis was found not guilty. Defendant appeals this judgment.

Defendant brings forth four assignments of error. For the following reasons, we find no error in the trial court's judgment.

I.

[1] By defendant's first assignment of error he argues the trial court erred when it overruled his objection to the State asking witness Kirkpatrick a leading question on direct examination that referenced defendant shooting Livingston. We disagree.

"A leading question is generally defined as one which suggests the desired response and may frequently be answered yes or no." *State v. Britt*, 291 N.C. 528, 539, 231 S.E.2d 644, 652 (1977) (citation omitted). "Historically, leading questions were generally only permissible on cross-examination, however, over the years other permissible circumstances have evolved." *State v. Summerlin*, 98 N.C. App. 167, 173, 390 S.E.2d 358, 361 (1990); N.C. Gen. Stat. § 8C-1, Rule 611(c) (2001). Two such permissible circumstances include the use of leading questions on direct examination if they were "either necessary to develop the witness' testimony or were questions which elicited testimony already received into evidence without objection." *Id. at* 173, 390 S.E.2d at 361. "Rulings by the trial judge on the use of leading questions are discretionary and reversible only for an abuse of discretion." *State v. Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986).

Here, defendant takes issue with the State asking Kirkpatrick on direct examination, "[D]id you describe the clothing that the Defendant Stafford had been wearing when he shot [Livingston]?" Defendant argues that by overruling his objection, the trial court eased the burden on the State, gave credibility to the State's witness, and possibly led the jury to believe the court was of the opinion that defendant had shot Livingston. However, after reading the trial transcript, we note that this question was preceded by the State asking Kirkpatrick what defendant did after she observed him with a shotgun in his hand. Kirkpatrick testified, "I saw him turn—walk on the driver side of [the victim's] car, he walked up to the car, stuck the shotgun in and said, who are you, man; who are you, man, and shot him." There was no objection made by defense counsel to this testi-

mony. Thereafter, when the State asked Kirkpatrick the question at issue, it was simply reiterating and further developing the testimony already given by this witness. Thus, we overrule this assignment of error because there was no abuse of discretion by the trial court.

## II.

**[2]** By his second assignment of error defendant argues the trial court committed reversible error by allowing the testimony and prior out-of-court statement of witness Culp to exclude any mention of co-defendant Davis. We disagree.

The United States Supreme Court addressed the exclusion of statements detrimental to a co-defendant in *Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476 (1968). This Court explained the *Bruton* decision in *State v. Johnston*, 39 N.C. App. 179, 249 S.E.2d 879 (1978), as follows:

> G.S. 15A-927(c)(1) codifies substantially the [*Bruton*] decision . . ., which held that the receipt in evidence of the confession of one codefendant posed a substantial threat to the other codefendant's Sixth Amendment right of confrontation and cross-examination because the privilege against self-incrimination prevents those who are implicated from calling the defendant who made the statement to the stand.

*Id.* at 182, 249 S.E.2d at 881. Additionally, this Court has held that an out-of-court statement that contains deleted references to a co-defendant is admissible as long as the "deletions [do] not materially change the nature of [the] statement." *State v. Giles*, 83 N.C. App. 487, 494, 350 S.E.2d 868, 872 (1986).

In the present case, the State called Culp as a witness to testify about conversations he had with defendant, in which defendant stated that he had gotten a gun from his "friend" and shot Livingston. Pursuant to *Bruton*, the trial court prohibited Culp from testifying that defendant was assisted by his "friend" due to the likelihood this reference would implicate co-defendant Davis. Like the trial court, we conclude that *Bruton* requires this reference to Davis be deleted to prevent possibly implicating him in the shooting and substantially threatening his Sixth Amendment rights. Also, since the essence of Culp's testimony was that defendant shot Livingston, defendant was not "prejudiced by the admission of the 'sanitized' statement" because it was not materially altered by deleting reference to Davis. *Id.*

## III.

**[3]** Next defendant assigns error to the trial court's overruling his objection to the State's question regarding his temper. In particular, defendant takes issue with the State asking him on cross-examination, "[D]o you recall telling [the investigating officer] that it is easy for you to become angry, that you've had a temper all your life?" Defendant replied, "If it's on tape, I said it, but it's—but at this time I don't remember saying that." Defendant argues this question was inadmissible character evidence pursuant to Rule 404(a) of our statutes.

Rule 404(a) states that generally "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion . . . ." N.C. Gen. Stat. § Rule 8C-1, Rule 404(a) (2001). Such character evidence is admissible when the defendant has first "opened the door" to a pertinent trait of his character. See *State v. Taylor*, 117 N.C. App. 644, 651, 453 S.E.2d 225, 229 (1995). In the case *sub judice*, the State attempted to offer evidence of defendant's temper before he "opened the door" and put his character at issue. Thus, the State's question was an attempt to elicit inadmissible evidence.

"Defendant must also show, however, that he was prejudiced by the erroneous admission of this evidence. A defendant is prejudiced 'when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached . . . .' " *Id.* at 652, 453 S.E.2d at 230 (quoting N.C. Gen. Stat. § 15A-1443(a)). Here, the State's question did not lead to the admission of any improper evidence because defendant did not admit he had a temper and the State did not elaborate further on defendant's "alleged" temper. Furthermore, considerable evidence was presented during the trial from which a jury could otherwise conclude that defendant was guilty of first-degree murder. This evidence included defendant admitting he was at the scene of the murder, Stewart testifying that defendant got out of his car and approached Livingston's car with a gun, and Kirkpatrick testifying that she saw defendant shoot Livingston. Therefore, the court's failure to sustain defendant's objection to the State's question regarding his temper was not prejudicial.

## IV.

**[4]** Finally, defendant assigns as error the court's failure to instruct the jury with regard to a possible verdict finding him guilty of second-

degree murder or involuntary manslaughter. We find this assignment of error to be without merit.

A "[d]efendant is 'entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater.' " *State v. Leazer*, 353 N.C. 234, 237, 539 S.E.2d 922, 924 (2000) (quoting *Keeble v. United States*, 412 U.S. 205, 208, 36 L. Ed. 2d 844, 847 (1973)). Our Supreme Court has held as a determinative factor that a second-degree murder instruction is not required if there is sufficient evidence "to fully satisfy the State's burden of proving each and every element of the offense of murder in the first degree . . . and there is no evidence to negate these elements other that defendant's denial that he committed the offense[.]" *State v. King*, 353 N.C. 457, 484, 546 S.E.2d 575, 595 (2001) (quoting *State v. Gary*, 348 N.C. 510, 524, 501 S.E.2d 57, 66-67 (1998)). This determinative factor can also be applied to an involuntary manslaughter instruction because "[a] jury should only be instructed with regard to a possible verdict if there is evidence to support it." *State v. Clark*, 325 N.C. 677, 684, 386 S.E.2d 191, 195 (1989) (citations omitted).

In the present case, defendant presented no evidence to support a second-degree murder or involuntary manslaughter instruction. The State's evidence tended to show that Livingston died as a result of defendant intentionally shooting Livingston while he was sitting in his car. If the jury were to believe this evidence, defendant is guilty of first-degree felony murder for shooting into an occupied vehicle and killing an occupant of that vehicle. *See* N.C. Gen. Stat. §§ 14-32, -34.1 (2001). Defendant offered evidence that he did not fire a gun at any time on the night in question and that the gun used to kill Livingston was never in his possession. If the jury were to believe this evidence, defendant is not guilty of any degree of homicide. After considering *all* the evidence, the jury unanimously found defendant guilty of first-degree murder under the first-degree felony murder rule based on the State's ability to support and prove every element of this crime. Since there was no evidence offered to support a finding of second-degree murder or involuntary manslaughter, the trial judge did not err in failing to submit an instruction on these two crimes to the jury.

Accordingly, the trial court did not err in entering a judgment finding defendant guilty of first-degree murder under the first-degree felony murder rule.

**PIEDMONT REBAR, INC. v. SUN CONSTR., INC.**

[150 N.C. App. 573 (2002)]

No error.

Judges MARTIN and HUDSON concur.